**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

ANDREA HIRST and MOLLY STOVER,    )
on behalf of themselves and all others similarly )
situated,                                       )
                                       )     CLASS ACTION
                     Plaintiffs,   )
                                       )     Civil Action No.
     v.                                )
                                       )     **JURY TRIAL DEMANDED**
SKYWEST, INC. and                )
SKYWEST AIRLINES, INC.       )
                                     )
                   Defendants.   )
                                       )

## CLASS ACTION COMPLAINT

Andrea Hirst (current flight attendant) and Molly Stover (former flight attendant) (collectively "Plaintiffs") bring this action on behalf of themselves and all other similarly situated non-unionized flight attendants ("Class") who are or were paid hourly wages by SkyWest, Inc. and SkyWest Airlines, Inc. (collectively "SkyWest") within the past three years. The Plaintiffs allege that SkyWest failed to compensate its Flight Attendants ("FAs") for each hour that they performed integral and indispensable duties as part of their primary job responsibilities.

## INTRODUCTION

1.  This case is simple: SkyWest FAs have the right to be paid for their labor. That right is guaranteed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., as well as under the Minimum Wage Law of the State of Illinois, 820 ILCS 105/1 *et seq.* For hourly employees like the Plaintiffs and the Class, the right to be compensated *for each hour worked* is not and cannot be bargained away, whether or not the employees are represented by a

1

union. The right to proper compensation is not relinquished in any industry. As hourly employees, for each hour that SkyWest FAs perform duties that are integral and indispensable to their primary responsibilities, they are entitled to be compensated for their time at no less than the minimum hourly wage as required by applicable state and federal laws.

2.      As further alleged and explained herein, SkyWest FAs are paid only for "block time," which does not comply with federal and state wage laws. Paying a FA only "block time" is comparable to an agreement to pay an attorney $10,000.00 per hour, but limiting compensable hours to those when the attorney is appearing in Court.

3.      SkyWest is and always has been 100% non-unionized. None of its employees in any work group (e.g., FAs, pilots, customer service representatives, etc.) are represented by a union. ExpressJet, another airline owned by the same parent corporation, SkyWest, Inc., is unionized.   SkyWest Airlines FAs are not represented by a union, but they do have an association which negotiates certain aspects of their work responsibilities and benefits with management, the SkyWest InFlight Association, or "SIA."

4.      In the absence of union representation, there is no Collective Bargaining Agreement to be applied or interpreted in this matter. No such agreement (whether real or imputed) must be analyzed to support each of the allegations made herein. *SkyWest's scheduling and pay records speak for themselves.*

## AIRLINE TERMINOLOGY

5.      Although many terms used by SkyWest are common travel terms (e.g., origin, destination, departure, and arrival), the meaning of other terms is specific within the airline industry (e.g., pairing, block, duty, and "TAFB"). Relevant airline terms are explained below using an actual (but also typical) work trip of Plaintiff Andrea Hirst. This four-day series of SkyWest flights was scheduled and flown from October 30, 2012 to November 2, 2012. It

2

included three overnight layovers away from Ms. Hirst's Chicago base ("**domicile"**). A Chicago-based crew worked this entire trip that began and ended at Chicago O'Hare International Airport ("ORD"). There were no major flight delays. *See* Figure 1: **Typical Pairing** below (bold red notations have been added for explanation; an unaltered copy of this pairing is attached as Exhibit A).

6. For every work trip (called a "**pairing**"), SkyWest Airlines creates a proposed minute-by-minute schedule (**Typical Pairing Details**, Fig. 1; *see also* Ex. A).

**Figure 1: Typical Pairing Details.**

### Pairing Details

AWD E1599 CRJ - 038405 Annie Hirst - ORD CR7 FA

**Tuesday 10-30-2012   Report: 14:20**   (A)

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | DL4466 | N460SW | CRJ | MSP | MOT | **15:38** | 16:57 | 49 | **1:19** | 1:30 | 449 | 3515 | 0:22 |
| 2. | DL4466 | N460SW | CRJ | MOT | MSP | **17:19** | 18:37 | 40 | **1:18** | 1:28 | 449 | 3033 | 0:55 |
| 3. | DL4724 | N460SW | CRJ | MSP | ATW | **19:32** | 20:29 | 37 | **0:57** | 1:01 | 236 | 2010 | |

Day Total: **3:34  3:59**   Duty: **6:24**   (C)

Release: 20:44/30   (B)   Hotel: Holiday Inn Select (920)735-9955   Layover: 9:31
Shuttle: SHUTTLE OPERATED BY HOTEL

**Wednesday 10-31-2012   Report: 06:15**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4. | DL4846 | N460SW | CRJ | ATW | MSP | **06:45** | 07:44 | 40 | **0:59** | 1:06 | 236 | 2290 | 1:25 |
| 5. | DL4560 | N659BR | CRJ | MSP | FAR | **09:09** | 10:11 | 30 | **1:02** | 1:02 | 223 | 2078 | 1:04 |
| 6. | DL4560 | N659BR | CRJ | FAR | MSP | **11:15** | 12:17 | 46 | **1:02** | 1:03 | 223 | 2005 | 0:47 |
| 7. | DL4655 | N659BR | CRJ | MSP | YWG | **13:04** | 14:34 | 40 | **1:30** | 1:30 | 394 | 3242 | |

(D) (E) (F)

Day Total: **4:33  4:41**   Duty: **8:34**   (G)

Release: 14:49/31   Hotel: Radisson Hotel Downtown (204)956-0410   Layover: 15:41
Shuttle: TRANSPORTATION PROVIDED BY THIRD PARTY VENDOR — Hollywood (2

**Thursday 11-01-2012   Report: 06:30**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8. | DL4736 | N915EV | CRJ | YWG | MSP | **07:23** | 08:46 | 47 | **1:23** | 1:29 | 394 | 2833 | 2:31 |
| 9. | DL4472 | N460SW | CRJ | MSP | LNK | **11:17** | 12:34 | 28 | **1:17** | 1:17 | 331 | 2497 | 0:24 |
| 10. | DL4472 | N460SW | CRJ | LNK | MSP | **12:58** | 14:15 | 47 | **1:17** | 1:19 | 331 | 2676 | 1:54 |
| 11. | DL4556 | N453SW | CRJ | MSP | BNA | **16:09** | 18:12 | 50 | **2:03** | 2:07 | 695 | 4509 | |

(H)

Day Total: **6:00  6:12**   Duty: **11:57**

Release: 18:27/01   Hotel: Wingate Nashville Airport (615)884-9777   Layover: 11:03
Shuttle: SHUTTLE OPERATED BY HOTEL

**Friday 11-02-2012   Report: 05:30**

| | Flight | Tail | A/C | Orig | Dest | Dep | Arr | Pax | Block | Credit | Miles | BurnAv | Turn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12. | DL4811 | N453SW | CRJ | BNA | CVG | **06:13** | 08:18 | 30 | **1:05** | 1:06 | 230 | 2126 | 0:40 |
| 13. | DL4648 | N453SW | CRJ | CVG | BNA | **08:58** | 08:54 | 46 | **0:56** | 1:01 | 230 | 2069 | 0:59 |
| 14. | DL4791 | N453SW | CRJ | BNA | MSP | **09:53** | 12:04 | 50 | **2:11** | 2:11 | 695 | 5130 | |

Day Total: **4:12  4:18**   Duty: **6:49**

Release: 12:19/02

**Totals:** Report 14:20/30  Release **12:19/02**  Block **18:19**  Credit **19:10**  TAFB **69:59**   (I)
Key: Scheduled;  Estimated;  **Actual**;  Overridden;

**Trip Summary**   Crewmembers for Each Flight   * First Flight  ✓ Checked In

| Captain | First Officer | Flight Attendant |
|---|---|---|

7.     The information on the **Pairing Detail** is electronically updated during and immediately following the completion of the trip and reflects the actual circumstances of the **pairing** as flown. **Pairing Details** for every trip that SkyWest has flown in the past several years are readily available, including all details about each of the employees who worked a particular flight. Upon information and belief, **Pairing Details** are available for each pairing, flight, and FA employed by SkyWest for no less than the previous five years. This information is accessible only to employees of the airline. FAs are able to see their own past and future schedules on SkyWest's SkedPlus+ system.

8.     The first substantive line of the **Pairing Details** shows information regarding the type of pairing ("AWD" means "Awarded"), the aircraft ("E1599 CRJ") and the flight attendant's employee number (038405) and name ("Annie Hirst"), the FA's **domicile** ("ORD" for Chicago O'Hare International Airport), and the employee's level of training and position ("CR7 FA").  For brevity, a description of details not related to hours and pay will not be fully defined.

9.     At the top left of each day's schedule (Fig. 1: A), the crew members' **report time** is shown. **Report time** is the time at which a crew member must have arrived at the airport, in full uniform, with all necessary items for flight (discussed further below), cleared security, and "**checked in**" through the company computer or a smart phone or tablet. Thus, on October 30, 2012, Ms. Hirst reported for duty at or before 14:20 (or 2:20 p.m.).[1]  If a FA **checks in** an hour before required, the required report time is shown rather than the actual **check in** time.

---

[1] Time of day designations are shown in local 24-hour military time, and all elapsed time is shown as hours:minutes. Note: generally the term **crew members** refers to both pilots and FAs, while **flight crew** refers only to pilots. This Complaint only addresses the circumstances of FAs.

10. The aircraft automatically sends a signal to SkyWest when the main cabin door is opened upon arrival at each destination. The **release time** is created when the scheduling system automatically adds 15 minutes to the last flight of the day, whether or not all passengers have actually deplaned and whether or not all FA duties are complete. The Figure 1 pairing detail shows Ms. Hirst's **release time** (Fig. 1: B) as 20:44/30, which means the main cabin door opened at 8:29 p.m. on October 30, 2012, and the entire crew was automatically "released from duty" at 8:44 p.m.

11. Calculating the difference between **report time** and **release time** results in the number of hours of the FA's "**duty day**." This particular amount of time is important because many Federal Aviation Administration ("FAA") flight safety regulations are tied to the length of the crew members' **duty day**. For Ms. Hirst, on October 30, 2012 her duty day lasted for 6 hours and 24 minutes (Fig. 1: C). All crew members who work a particular pairing have the same **report times**, **release times**, and **duty day** hours.

12. Figure 1, notations D, E, F, and G are highlighted to explain the travel details for a single day, October 31, 2012. The first flight of this day originated at ATW (Outagamie County Regional Airport in Wisconsin) at 6:45 a.m. and arrived at MSP (Minneapolis St. Paul) at 7:44 a.m. (Fig. 1: D, line 4). The "**block time**" (sometimes called "**flight time**" although there are minor distinctions between the terms) for this trip is 59 minutes (Fig. 1: E). **Block** time indicates the actual length of time that it took to fly between these two airports on this specific day, from "**block out**" (closing the main cabin door and moving away from the jet bridge) to "**block in**" (arriving at the destination jet bridge and opening the main cabin door).

13. Further to the right on line 4, the "**turn time**" (or time between flights) is indicated in elapsed hours and minutes. As shown in Fig 1: F, line 4, the **turn time** between the

6

flight on line 4 and the flight on line 5 was 1 hour and 25 minutes. Generally, if the **turn time** is less than 45 minutes, FAs *cannot* leave the airplane due to FAA and SkyWest required postliminary and preliminary responsibilities.

14.     During **turn times** lasting over an hour, FAs may leave the plane, eat a meal, or use the airport's restroom. However, regardless of the *scheduled* length of the **turn time** in a given **duty day**, FAs are required to remain in the airport and in full uniform. SkyWest can, and often does, rearrange FA schedules mid-**duty day** to reduce overall flight delays by replacing a delayed crew with one that is already in the airport. The ability of the airline to rearrange a FA's schedule and destination without consultation with the FA is an integral and indispensable airline scheduling tool. Its ability to make near-instantaneous crew schedule changes enables SkyWest to reduce or avoid service delays for revenue passengers, thereby keeping the overall national transportation system more efficient and timely.

15.     If SkyWest has scheduled an "**equipment change**" (change from one aircraft to another) or if there are mechanical problems with the original aircraft, the **turn time** is used by the FAs to gather all of their belongings, walk to the other gate, and perform a security and supply check on the new aircraft prior to boarding passengers. Any unanticipated delays (e.g., mechanical problems or weather delays) appear as **turn times** and are uncompensated for FAs unless the main cabin door is closed. FAs receive no compensation during either scheduled or unanticipated **turn times**.

16.     **Turn time**, as scheduled by SkyWest, is closely related to another term, "**leg**." If a flight attendant has four individual flights, called "**legs**" in a single day, the airline keeps a record of the actual **turn time** between each flight, as shown in Fig. 1: F.   A **pairing** with four **legs**, as compared to one **leg**, means that the FA will work a longer day with more

uncompensated hours, and the FA will have more associated preliminary and postliminary duties. If both **pairings** in this example have the same **block** time, the four **leg duty day** is much longer than the one **leg duty day**, yet they receive exactly the same hourly compensation ("block time").

17. Figure 1: G shows the "**layover**" or rest time. This number is calculated from the **release** time of day 1 to the **report** time of day 2, and so on. In Figure 1, beginning on October 31, 2012, Ms. Hirst was no longer on duty beginning 2:49 p.m. on October 31, 2012 and ending at 6:30 a.m. on November 1, 2012, a **layover** lasting 15 hours and 41 minutes. FAs are only permitted to leave the airport and to be out of uniform during **layovers**. FAs receive no compensation during a **layover**.

18. **Layover** times are heavily and strictly regulated by the FAA, including *inter alia* the numbers of hours required for rest, the use of alcohol during a **layover**, and the amount of rest time required based upon the length of the FA's **duty days** both before and after the **layover**.

19. Figure 1: H highlights the "**credit**" (hours and minutes each specific flight is estimated to take) for the four flights scheduled for November 1, 2012 (1:29, 1:17, 1:19, and 2:07). When the actual **block out** to **block in** takes less time than the estimated **credit** time, FAs receive hourly pay based upon the estimated **credit** time. For example, comparing Figure 1: H, line 8 **block** time of 1:23 to line 8 **credit** time of 1:29. Ms. Hirst received pay for 1 hour and 29 minutes for this flight.

20. However, on a completed schedule, when the **credit** time appears in red as it does on Figure 1: H, line 9, the **credit** time has been "overridden" due to the flight requiring more actual **block** time. To receive the additional credit time, the airline requires that each crew member of a flight submit a form for the increased compensation. The FA's compensation is

8

based exclusively on the **credit time** for each day as highlighted in Figure 1: H. As illustrated in Fig. 1: H, Andrea Hirst was paid hourly for a total of 6 hours and 12 minutes on November 1, 2012.

21.     The bottom row of Figure 1 (**Trip Summary**) shows cumulative **pairing** information. The first **report** time and last **release** time of the entire **pairing** is shown (here, 14:30/30 and 12:19/02) along with the cumulative **block** and **credit** times.

22.     Finally, **TAFB** ("Time Away from Base") indicates that Ms. Hirst was away from her **domicile** for a total of 69 hours and 59 minutes. For those hours, she received a non-taxable per diem of $1.80 per hour.  Like a travel per diem in any occupation, the purpose of the FAs' per diem is to offset the extra expenses associated with eating out while traveling, transportation while away from home, etc. For each 24-hour period, this $1.80 per hour per diem equals $43.20. For this particular **pairing**, she received a non-taxable per diem of $126.00 for the added expenses associated with being away from home for four days.

23.     As shown in Figure 1, Ms. Hirst was compensated (indicated as **credit**) for a total of 19 hours and 10 minutes between October 30, 2012 and November 2, 2012.  However, for the same period of time, she was *actually on duty and working* for a total of 33 hours and 44 minutes (adding together the daily **duty day** times of 6:24, 8:34, 11:57, and 6:49).  During the **pairing** shown in Figure 1, Plaintiff Andrea Hirst was on duty, in uniform, interacting with the public, and working subject to the rules and directions of SkyWest for a total of 33 hours and 44 minutes but was only paid for 19 hours and 10 minutes. The compensation for every **pairing** for every SkyWest FA is calculated in this manner.

## LEGAL BASES FOR COMPLAINT

24. Plaintiffs Andrea Hirst and Molly Stover bring this action as a Collective Action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of themselves and a nationwide Class consisting of former and current FAs of SkyWest Airlines who are owed unpaid wages under the FLSA, 29 U.S.C. §201 *et. seq.* Plaintiffs bring this action to recover the compensation, liquidated damages, costs, and reasonable attorneys' fees that they and members of the nationwide Class are entitled to under the FLSA.

25. Plaintiffs also bring this action as a Class Action on behalf of the Illinois Class pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals who were employed by SkyWest Airlines as FAs, as a result of SkyWest's failure to pay wages for actual hours worked as required by the Minimum Wage Law of the State of Illinois, § 820 ILCS 105/1 *et seq.* Plaintiffs bring this action to recover the compensation, damages, costs, and reasonable attorneys' fees that they and members of the Illinois Class are entitled to under the Minimum Wage Law of the State of Illinois, § 820 ILCS 105/1 *et seq.*

## JURISDICTION & VENUE

26. This Court has jurisdiction over this action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), which provides: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, 29 U.S.C. § 201 *et seq.* This Court has jurisdiction, pursuant to the

principles of supplemental jurisdiction and 28 U.S.C. § 1367, over the Illinois Minimum Wage Law claims alleged herein.

27.     This Court has personal jurisdiction over SkyWest because it: (1) operates a business within this District; (2) committed acts in violation of the FLSA as alleged herein within this District; (3) maintained continuous and systematic contacts with this District over a period of years; and (4) purposefully availed itself of the benefits of doing business within this District.

28.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because SkyWest conducts business within this District, has agents within this District, transacts its affairs in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

29.     <u>Plaintiff Andrea Hirst</u> is a resident of Chicago, Cook County, Illinois. She resides in this District and is currently employed by SkyWest Airlines as a flight attendant. She was hired as a flight attendant on April 20, 2010 (after successfully completing FAA required training). She is currently based in Chicago and has been based in Chicago O'Hare International Airport for the majority of her tenure with SkyWest.

30.     <u>Plaintiff Molly Stover</u> is a resident of Chicago, Cook County, Illinois. Plaintiff Molly Stover resides in this district and was formerly employed by SkyWest Airlines as a flight attendant. She was hired by SkyWest on August 9, 2012 and resigned from her position in November, 2014. She was based out of Chicago O'Hare International Airport for all of her tenure working for SkyWest.

31.     Defendant SkyWest, Inc. is a Utah corporation that is registered to do business in Illinois, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest, Inc.'s stock is traded on the NASDAQ market as SKYW.

32.     Defendant SkyWest Airlines, Inc. is a Utah corporation that is registered to do business in Illinois, and whose principal office is located at 444 South River Road, St. George, Utah 84790. SkyWest Airlines is a wholly owned, non-unionized subsidiary of SkyWest, Inc.

33.     SkyWest, Inc. and SkyWest Airlines, Inc. are, for the purposes of the FLSA and the Illinois Minimum Wage Law, a common or joint enterprise or partnership that is collectively, jointly and severally liable to Plaintiffs and members of the Class as described herein.

34.     SkyWest is in the business of providing regional commercial air service to cities across the United States, Canada, Mexico and the Caribbean.

35.     Defendant SkyWest, Inc. is the parent company to SkyWest Airlines, Inc. (a non-unionized airline) and ExpressJet Airlines, Inc. (a unionized airline that is not a party to this matter). Together these two airlines schedule approximately 4000 flights per day and have a combined fleet of approximately 755 aircraft. SkyWest, Inc. employs approximately 20,000 people.

36.     Defendant SkyWest Airlines, Inc. operates its fleet of airlines through partnerships with United Airlines, Delta Air Lines, US Airways, American Airlines and Alaska Airlines.

37.     Upon information and belief, SkyWest currently employs approximately 2663 FAs, of which 389 are domiciled at Chicago O'Hare International Airport. None of the FAs at SkyWest are represented by a union, nor are they covered under the terms of a collective bargaining agreement.

38.    Plaintiffs and members of the Class have been employed as FAs by SkyWest Airlines during the three years preceding this lawsuit. SkyWest pays or paid Plaintiffs and members of the Class hourly only per **block** hour although each **duty day** includes uncompensated pre- and post-flight responsibilities that are integral and indispensable to the FAs' primary job duties. Many hours of each duty day are uncompensated.

39.    Although individual FA's hourly rates of pay vary based upon seniority, the method for calculating the number of hours worked (**block time**) is identical for every SkyWest FA regardless of all other factors.

40.    Upon information and belief, during the three years preceding the filing of this Complaint, SkyWest Airlines has employed thousands of similarly situated FAs within the United States who have received hourly wages based only on the **block time**, even though they were required to perform integral and indispensable activities during their entire **duty day**.

## SUBSTANTIVE ALLEGATIONS

**Flight Attendant Responsibilities**

41.    SkyWest employs FAs to ensure the safety of the passengers through required inspections of the aircraft prior to and after each flight, to assist passengers while the passengers are boarding or are onboard the aircraft, to provide customer service such as serving meals and drinks, and to assist passengers and the flight crew until all passengers have departed from the aircraft.

42.    SkyWest, on its "Careers" website,[2] describes the duties of a FA as:

- Ensure safety and comfort of customers onboard the aircraft

---

[2]    https://rn21.ultipro.com/sky1000/jobboard/JobDetails.aspx?__ID=*899EC10BCA5CC4E1 (January 28, 2015).

- Prepare/serve meals and beverages including alcohol
- Greet passengers, assist with carry-on baggage stowage, and deliver onboard announcements
- Provide leadership in emergency and non-emergency situations
- Calmly resolve passenger situations during flight, including disorderly passengers, and medical emergencies
- Ensure compliance with safety regulations
- Adhere to established procedures and performance standards.

43.     In addition to the specific duties listed on its Careers website, SkyWest FAs are required to **check in** for their **duty day** at a specific time prior to the departure of their initial flight of the day, board the aircraft and perform specific FAA required safety checks prior to allowing passengers to board, assist passengers prior to departure and upon arrival at the flight's destination, clean and straighten the plane between flights, and prepare reports regarding on-board incidents following their flights, as described further herein.

44.     All SkyWest FAs are uncompensated for many hours of each **duty day**, even though their uncompensated activities are integral and indispensable to their principal activities and responsibilities. FAs are promised a minimum of 4 hours of **block time** (which was only recently increased from 3 hours and 57 minutes) for any given **duty day**, which may be as long as 16 hours long.

> *Uncompensated Integral and Indispensable Preliminary Activities*
> See Exhibit B: Phases of Flight Checklist

45.     Prior to reporting for duty, each FA must have cleared airport security screening, met all uniform requirements, and have in his or her possession all mandatory items for duty, which include:

- Passport
- Badge
- Flight attendant certificate
- Flashlight
- SkyWest InFlight Operations Manual

14

- Uniform–all mandatory pieces
- Wings
- Liquor fund money

46.    In addition, certain required emails from SkyWest (called: "**Must Know Before You Go**") must be opened and confirmed as read prior to **check in**. These emails include training information and manual updates, some of which are hundreds of pages long. SkyWest Manual updates must be printed and physically in each FA's Manual prior to flying.

47.    Each FA is required to **check in** (also called **report for duty**) a <u>minimum of 45 minutes</u> prior to their first flight's scheduled departure time. To do so, the FA must either **check in** on a company computer, or alternatively, **check in** through the company's website using a smart phone or tablet.  *See* Figure 2.



Figure 2: Smart Phone **Check-In** Screenshot

48.    For international flights, FAs must report for duty 60 minutes prior to the scheduled departure time. For subsequent days of a **pairing**, the **report time** may be reduced to 30 minutes for smaller aircraft which are scheduled to travel to domestic destinations. These

variations in report time do not change the methodology for calculating hours for compensation or the FAs' compensation since the FAs are not paid at all until the main cabin door is closed.

49.     Since January 2014, FAs have been required to **check in** a second time with the gate agent at specific lengths of time prior to the scheduled departure. Depending on the size and configuration of the departure airport, this additional **check in** requirement often necessitates an even earlier **report time** based upon the distance to the actual gate.

50.     The gate **check in** times (based upon plane size) are:

- EMB120: 20 minutes prior (36 passengers)
- CRJ 200: 30 minutes prior (50 passengers)
- CRJ 700, CRJ 900, and ERJ 175: 35 minutes prior (66 passenger, 70 passengers, and 70 passengers respectively).

51.     These plane size variations for gate **check in** times also do not change the methodology for calculating compensated hours or the FAs' actual compensation since the flight attendants are paid no wages until the main cabin door of the aircraft is closed.

52.     Once on the plane and prior to closing the main cabin door, FAs are required to perform the following duties, most of which are mandated by the FAA and all of which are specifically required by SkyWest:

- Conduct a preflight and pre-boarding safety check, including but not limited to verifying that all required safety, lighting, and emergency equipment is onboard, operable, and has no signs of tampering or vandalism;
- Participate in a pre-flight briefing with other crew members;
- Verify that commissary supply is sufficient, including but not limited to "extended delay food rations" for passengers as required by the FAA;
- Notifying pilots and gate agents that all preliminary safety duties have been completed, that the FAs are in their appointed positions, and that passenger boarding may begin;
- Assisting in the boarding and greeting of passengers while stationed in specific locations within the aircraft;
- Assessing potential threats to passengers, crew, and aircraft;
- Assisting passengers during the boarding process;
- Confirming that infants are seated on the correct side of aircraft, and that child safety seats are properly attached;

- Conducting unaccompanied minor individual briefings;
- Conducting flight introduction and required pre-taxi announcements as required by the FAA;
- Verifying passengers' seatbelts are fastened, that luggage is stowed in compliance with FAA, closing overhead bins, securing loose items for the safety of the passengers and crew, and instructing passengers if excessive carry-on luggage must be checked;
- Briefing exit row passengers about FAA exit row requirements, reseating exit row passengers if the Flight Attendant has concerns about the passenger's ability or willingness to understand and perform safety-related tasks;
- Providing first class passengers with drinks and hanging coats;
- Verifying that boarding passenger totals ("pin counts") match the passenger manifest by counting each adult, child, and infant passenger, then delivering the appropriate paperwork to the gate agent and pilots;
- Making passenger weight and balance adjustments for the stability of the aircraft;
- Reseating or removing passengers from the plane for safety issues including but not limited to the passenger's failure to abide by the FA's requests, the passenger's demeanor or behavior toward other passengers, or the passenger's lack of sobriety;
- Verifying that refueling has been completed prior to the closure of the main cabin door; and
- Requesting permission from pilots to close the main cabin door.

53.     The performance of the above list of duties is wholly uncompensated since FAs are paid no wages until the main cabin door of the aircraft is closed.

54.     If the flight is delayed after even just a single passenger has boarded, the FAs are strictly prohibited from stepping off of the aircraft. Delays may be related to events including but not limited to air traffic control instructions, weather delays, and maintenance needs related to the aircraft. The reason for delay does not affect the method of calculation of wages since the flight attendants are paid no wages until the main cabin door is closed.

*Compensated Block Time Activities*

55.     Once the main cabin door is closed and the aircraft pulls away from the airport's jetbridge, i.e., **blocks out**, SkyWest FAs hourly wages begin accruing.

17

56.   Fifteen minutes after the aircraft **blocks in** to the jetbridge at their destination, FAs' hourly compensation is terminated, *regardless of the length of time that is required to deplane passengers or perform other post flight duties*.

*Uncompensated Integral and Indispensable Postliminary Activities*

57.   After the aircraft **blocks in** and as the passengers begin to depart the aircraft, the FAs must monitor deplaning activities from specific duty stations as required by the FAA. FAs are strictly prohibited by the FAA from leaving the aircraft so long as a single passenger is still on board.

58.   After all passengers have deplaned, the FAs must perform the following integral and indispensable activities prior to leaving the aircraft themselves, all of which are required by SkyWest and most of which are strictly regulated by the FAA:

- Search the aircraft to verify that no one is remaining;
- Check the aircraft for suspicious items which might have been left behind;
- Check all emergency and safety equipment to verify that none have been tampered with during the flight;
- Remove all trash, straighten and cross seatbelts, fold blankets, and clean the cabin (except on the final flight of the day);
- Verify that all safety brochures are in the seatback pockets and visible for subsequent passengers; and
- Verify that the aircraft is stocked and ready for subsequent flights, including but not limited to beverages, extended delay provisions, paper goods, and emergency supplies.

59.   According to the SkyWest Airlines InFlight Operations Manual, "time spent conducting passenger boarding or deplaning duties is considered duty hours."

60.   The FAs then either prepare for the next flight on the same aircraft, or leave that aircraft and continue their trip on a different aircraft.

18

61.     If the **crew members** (including FAs) are continuing on the same aircraft, they must repeat the entire set of preliminary responsibilities, again without compensation until **block time** pay restarts. If their next departure time is within approximately 45 minutes, there is little possibility that the FAs will be able to leave the plane for any reason between their flights.

62.     If the **crew members** (including FAs) must change aircraft, they must leave the plane, change gates, and repeat the entire set of preliminary responsibilities on the new aircraft, which generally increases the time of uncompensated preliminary duties. Many **pairings** include scheduled or unscheduled changes of aircraft.

63.     At the very end of the **duty day** after the **crew members' release time**, they must await ground transportation to travel to a hotel for the night, or they return home at the end of the **pairing**.

64.     During any given **duty day**, a SkyWest FA works between one and seven or more individual flights ("**legs**"), so long as the *scheduled* **duty day** does not exceed 14 hours in a 24-hour period. According to FAA regulations and SkyWest policies, a FAs' actual **duty day** can be as long as 16 hours, so long as the additional two hours are the result of delays rather than scheduling.

65.     Since SkyWest is a commuter airline company, the lengths of the actual flight "**legs**" range from 19 minutes long to 4 hours and 13 minutes long according to the company's InFlight Manual.

## COMPENSATION

66.     SkyWest compensates all of its FAs on an hourly rate, yet those hours are only calculated from the time that the aircraft has **blocked out** to when the aircraft has **blocked in**.

67. Plaintiffs and Class Members are uncompensated for the majority of the hours in their **duty day**. They do not receive a guaranteed salary for all hours actually worked.

68. Plaintiffs and Class members do not receive compensation based upon the numbers of hours they work in a given **duty day**, but only on the number of **block time** hours that their aircraft is actually moving or in flight. Thus, Plaintiffs and Class Members are required to **check in**, be in full uniform, interact with and supervise passengers, and perform safety-related and other integral and indispensable tasks for several hours each **duty day**, for which they do not receive compensation as required by state and federal wage laws.

69. SkyWest has little motivation to minimize the length of the FAs' workday since the company's labor costs are not associated with the length of **duty days**.

70. According to SkyWest Airline's Flight Attendant Policy Manual, Standard Practice 2308, Paragraph 1, entitled "Compensation," the following is the compensation policy for flight attendants:

A. Applicable pay rates are set forth in SP 2327 SkyWest Airlines Flight Attendant Compensation with flight attendants advancing from one longevity pay status to the next on the anniversary of their date of hire and advancing from one cost of living pay status to the next each January 1.[3]

B. All flight attendants are credited and paid flight time flown, calculated by individual historic block-to-block times as outlined in SP 2328 Historical Block-to-Block Times or actual block-to-block time, whichever is greater. To receive actual block-to-block time when a flight exceeds the historic block-to-block time, a Payroll Correction Sheet (SP 2330 Payroll Correction Sheet) must be completed. After completion, each flight attendant must sign to verify its authenticity. The Company allows flight attendants to turn in a Payroll Correction Sheet with the approval of the Vice President InFlight Operations. The filing of a fraudulent claim is grounds for immediate termination. . . .

---

[3] SP 2327 provides the hourly rate of pay per block for flight attendants based upon the number of years they have been employed by SkyWest Airlines.

C. Overtime is paid at a rate of 1½ times a flight attendant's hourly rate whenever a flight attendant is junior manned by the Company.[4]

## SKYWEST AIRLINES LACKS A COLLECTIVE BARGAINING AGREEMENT

71.     SkyWest Airlines lacks a collective bargaining agreement. Specifically, in its "Nature of Employment" policy, attached as Exhibit C, SkyWest states:

> Policies set forth in the SkyWest Airlines Company Policy and the SkyWest Airlines Employee Handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between the employer and any of its employees. The provisions of the policy and handbook have been developed at the discretion of management and may be amended or cancelled at any time at the organization's sole discretion.

72.     On its employee website SkyWest Airlines includes a "Union Free Statement," boasting that this airline "has been union free for more than 40 years; it is our intent to remain so. . . . [M]anagement vigorously opposes, by every legal means possible, any attempt by a union to organize company associates." The statement goes on to say that SkyWest "update[s its] policies and procedures to ensure [employees] will be treated fairly and consistently" and that it strives "to provide each employee with open communication channels, good working conditions, competitive pay and benefits." *See* Exhibit D.

73.     Although SkyWest FAs have communication access to management through SIA, according to SkyWest "[t]he purpose of employee committees is to provide avenues for employees to deal directly with management, provide input, and have [their] concerns addressed.

---

[4] The InFlight Operations Manual defines **Junior Manned** as "An overtime pairing voluntarily accepted by a flight attendant. See also Junior Man (Overtime) Pay." **Junior Man (Overtime) Pay** is defined as "Junior Man (overtime) is paid at the rate of 1½ times the flight attendant's hourly rate."

*Better management decisions* are an important by-product of input from the committee members . . ..." (Emphasis added). *See* Ex. D.

74. Upon information and belief, SIA's arrangement with SkyWest does not include any provision for an arbitration board chosen by the parties, arbitration, or mediation of disputes, as would be required by a collective bargaining agreement under the Railway Labor Act, 45 U.S.C. § 151 *et seq*. Unresolved employee-management grievances are decided by a senior member of SkyWest management who is employed by the airline. Individually or collectively, the FAs have no actual recourse for disputes with management.

75. The SkyWest Employee Council ("SEC"), including SIA, provides input to SkyWest management regarding various policies and procedures, including certain aspects of employees' compensation packages. Upon information and belief, SkyWest management is and has been completely unwilling to discuss or listen to employee input through the SEC, SIA, or the comparable pilots' association, SkyWest Airline Pilots' Association ("SAPA"), about paying hourly compensation for any time other than **block time**. *Thus, none of these internal "associations" including but not limited to the SEC, SAPA, and SIA, have any bargaining power (such as the ability to strike, file grievances to be decided by a neutral mediator, arbitrate, or conduct a mediation where issues are decided by a neutral mediator) over the uncompensated preliminary and postliminary duties and which are directly related to the employees' primary responsibilities.*

76. Significantly, each "Letter of Agreement" signed between SkyWest and SIA states explicitly that "[n]o policy within [the InFlight Operations Manual] shall remain in effect if it is discovered to be in violation of law." *Compensating flight attendants only for "block*

time" and not for all integral and indispensable work responsibilities violates both the Illinois Minimum Wage Act and the Fair Labor Standards Act.

77.     In the "Employee Matters" section of its most recent Annual Report, the parent company SkyWest, Inc. discusses the Railway Labor Act and its collective bargaining agreements (see Exhibit E, pp. 15-16). Notably absent is any indication that any labor group or association related to the non-unionized SkyWest Airlines has a collective bargaining agreement.[5] SkyWest InFlight Association (SIA) is not listed in the 2013 Annual Report's chart indicating any agreement between management and SIA.

78.     On page 17 of its Annual Report, the SkyWest, Inc. cautions investors that "[c]ollective bargaining group organization efforts among SkyWest Airlines' employees do, however, occur from time to time and we anticipate that such efforts will continue in the future." See Ex. E, p. 17. The Airline makes it quite clear in its Annual Reports (as well as on employee websites that are not publically accessible) that it opposes collective bargaining agreements with employee groups, including but not limited to FAs.[6]

79.     In the matter before the Court, there is no Collective Bargaining Agreement to be applied or interpreted. More importantly, no such agreement (whether real or imputed) must be analyzed to support each of the allegations made herein. SkyWest's scheduling and pay records speak for themselves with no interpretation needed to ascertain that the FAs are wholly uncompensated for hours of every duty day.

---

[5] Every entity in the Annual Report's "Collective Bargaining" chart (Ex. E, p. 16) is associated with the unionized sister airline, ExpressJet, which is not a party to this matter.

[6] See http://inc.skywest.com/invest/reports.php for SkyWest, Inc. Annual Reports from 2002 to 2013.

## PLAINTIFF-SPECIFIC FACTS

Plaintiff Andrea Hirst

80.     Plaintiff Andrea Hirst has worked as a FA for SkyWest for almost five years. In that time, she has worked as many as seven **legs** in a single day. According to Ms. Hirst, the seven, eight, or even as many as nine flight days are the most difficult since each flight requires preliminary and postliminary duties, yet **block times** are of extremely short duration (e.g., 15-30 minutes). This sort of scheduling results in long and difficult **duty days** especially for the junior-most FAs, yet also results in many uncompensated preliminary and postliminary duty hours.

81.     Since seniority status affects how schedules are assigned, Ms. Hirst now receives more favorable **pairings** based on her rank in the Chicago O'Hare (ORD) **domicile**. Despite these more favorable **pairings**, SkyWest's method of calculating compensation does not pay Ms. Hirst for all of the hours she is required to work.

82.     As an example, on December 21, 2014, Ms. Hirst had an overnight layover in San Francisco (SFO). She had a scheduled **report time** of 09:55 (9:55 a.m.) on December 22, 2014, the second day of the **pairing**. The incoming aircraft was delayed so she was required to wait at the airport for its arrival, in full uniform and without wage compensation. *See* Figure 3: **Pairing Details** for December 21, 2014 to December 24, 2014.



Figure 3: Pairing Details.

83.     Despite the 09:55 **report time** on December 22, 2014, due to an aircraft arrival delay Ms. Hirst was not able to board the aircraft until 15:45 PST, *almost 6 hours later*. Ms. Hirst and the other FA completed their preflight safety checks, restocked the aircraft with necessities, boarded and counted passengers, made preflight announcements, and completed required preliminary duties, all without being compensated. The flight finally **blocked out** at 16:27 PST, approximately 6½ hours after the **crew member's report time**. The plane **blocked**

**in** at Kansas City (MCI) at 21:49 CST as shown on Fig. 3, line 3. For her workday to this point, Ms. Hirst received 3 hours and 43 minutes in **block time** compensation. (Fig. 3: line 3).

84.     The **crew members** took no time to eat, rest or leave the plane, but instead immediately prepared for the return flight to SFO. As shown on the pairing detail (Fig. 3: line 3), the **turn time** was 35 minutes, all of which was uncompensated. The plane **blocked out** at 22:24 CST (Fig. 3: line 4). The aircraft **blocked in** at SFO at 00:29 PST on December 23, 2014. Ms. Hirst received 4 hours and 5 minutes in **block time** compensation for the second flight of this day (Fig. 3: line 4). After deplaning passengers and completing all postliminary duties, Ms. Hirst and the rest of the **crew members** waited for the airport shuttle to the hotel. According to contemporaneous notes that Ms. Hirst made, the shuttle picked them up at the airport at 01:15 to take them to a hotel.

85.     On December 22, 2014, Ms. Hirst was compensated for a total of 7 hours and 48 minutes, although her **duty day** as recorded by SkyWest was 14 hours and 49 minutes long. Over 7 hours of Ms. Hirst's **duty day** *was completely uncompensated*. Furthermore, during the more than 16 hours that elapsed from the time she left her hotel until she returned to the hotel after her final flight, Ms. Hirst was in uniform and representing SkyWest in the eyes of the public, subject to its strict requirements while in uniform.

Plaintiff Molly Stover

86.     Plaintiff Molly Stover began working for SkyWest Airlines in early August 2012. She worked as a SkyWest FA until November, 2014.

87.     In February or March 2014, Ms. Stover was scheduled to travel from Chicago to Charleston then back to Chicago. Her aircraft had mechanical problems in Charleston, and Ms.

Stover was required to stay overnight. She did not receive extra compensation despite unexpectedly working another day and being away from home overnight.

88.     During the summer of 2014, Ms. Stover was scheduled to leave Salt Lake City, but was delayed approximately five hours. She sat at the airport and ended up getting home from work five hours later than scheduled but did not receive any additional compensation for her duty day.

89.     Ms. Stover was required to cancel many of her personal and family plans when she was working as a FA because of flight delays or cancellations, yet she never received additional compensation for the non-scheduled hours she was required to work, nor was she fully compensated for her work hours even when flights were not delayed. Her family and friends jokingly chided her that she was "volunteering her time" to the company.

90.     Ms. Stover quit working for SkyWest in part because she did not receive compensation for all of the hours that she worked.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), also commonly referred to as an "opt-in" class, on behalf of themselves and all current and former FAs of SkyWest who were not compensated for all hours which they worked in the three years prior to the filing of the complaint.

92.     Plaintiffs also bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following Illinois Class:

> All persons who were formerly or are currently employed as flight attendants for SkyWest Airlines based in Illinois and who were paid "block" pay for their duty day responsibilities during the 3 years prior to the filing of the complaint.

27

93.     These claims are brought under the Minimum Wage Law of the State of Illinois, §
820 ILCS 105/1 *et seq*.

94.     Excluded from the Class are the Defendants, their officers, directors, agents,
trustees, parents, children, corporations, trusts, representatives, Defendants' employees other
than SkyWest Flight Attendants, principals, servants, partners, joint venturers, or entities
controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related
to or affiliated with Defendants and/or their officers and/or directors, or any of these persons; the
Judge assigned to this action, any member of the Judge's immediate family; and counsel for the
Plaintiffs.  Additionally union-represented flight attendants who are employed by ExpressJet
Airlines (also owned by SkyWest, Inc.) are excluded from the Class.

95.     Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23, in that: (a)
the Class is so numerous that joinder of all members is impracticable; (b) there are questions of
law or fact common to each Class member; (c) the claims or defenses of each Class member is
typical of the claims or defenses of all Class members; (d) the representative party will fairly and
adequately protect the interests of the Class.

96.     **Numerosity**.  Plaintiffs are informed and believe, and on that basis allege, that the
proposed Class contains thousands of similarly situated persons who are either currently or
formerly employed by SkyWest as FAs. The precise number of Class Members is currently
unknown to Plaintiffs. The true number of Class Members is known by Defendants, however,
and thus, may be notified of the pendency of this action by first class mail, electronic mail, and
by published notice. The members of the Class are so numerous that joinder of all members
would be impracticable.

97. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether the SkyWest failed to pay wage compensation for all hours worked by the Class;

   b. Whether SkyWest improperly calculated the hourly pay of FAs by paying compensation only for **block time** (**block out** to **block in**) although the FAs were required to perform work which was integral and indispensable to their primary duties both before and after the **block times**;

   c. Whether SkyWest engaged in the unlawful practices alleged herein;

   d. Whether SkyWest is liable to Plaintiffs and members of the Class for damages for conduct actionable under U.S. federal and Illinois state laws; and

   e. Whether Plaintiffs and members of the Class have sustained damages as a result of SkyWest's conduct, and, if so, the appropriate measure of damages.

98. **Typicality**. Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs and each member of the Class have been injured by the same wrongful conduct of SkyWest. Plaintiffs' claims arise from the same practices and course of conduct that gave rise to the Class Members' claims and are based on the same legal theories. Plaintiffs, like all Class Members, have not been fully compensated SkyWest pursuant to state and federal labor laws, and thus Plaintiffs, like all Class Members, have been damaged by SkyWest's unlawful conduct.

99. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex

class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

100.  **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Class could afford such individualized litigation, the court system could not. Individualized claims brought by members of the Class would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**Minimum Wages Required Under 29 U.S.C. § 206**

101.  Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

102.  SkyWest in the business of providing regional commercial air service to cities across the United States, Canada, Mexico and the Caribbean, and employs FAs such as Plaintiffs and members of the Class to provide passengers with safe and comfortable travel accommodations according the requirements of the FAA and SkyWest.

103.     At all relevant times, as a provider of "transportation . . . among the several States or between any State and any place outside thereof," SkyWest has been engaged in "commerce" as defined by FLSA, 29 U.S.C. § 203(b).

104.     At all relevant times, SkyWest constituted an "employer" engaged in commerce as defined by Section 3(d) of the FLSA, 29 U.S.C. §§ 203(d).

105.     At all relevant times, Plaintiffs and the Class were considered "employees" under Section 3(e) of the FLSA, 29 U.S.C. § 203(e), as well as "employees engaged in commerce" under Section 6(a) of the FLSA, 29 U.S.C. § 206(a).

106.     Section 6 of the FLSA, 29 U.S.C. § 206, provides for a statutory minimum hourly wage for all employees "employed in an enterprise engaged in commerce."

107.     Although Section 13(b)(3) of the FSLA, 29 U.S.C. § 213(b)(3), specifically exempts employees of "carriers by air" from the "maximum hour" provisions of Section 7 of the FLSA, 29 U.S.C. § 207, Section 13(a) of the FSLA, 29 U.S.C. § 213(a), specifically does *not* provide a similar exemption for carriers of air from the comparable "minimum wage" provisions of Section 6 of the FLSA, 29 U.S.C. § 206.

108.     Here, SkyWest violated Section 6 of the FLSA, 29 U.S.C. § 206, by failing to pay any wages at all to Plaintiffs and the Class during certain clearly defined and traceable portions of their **duty day**, including but not limited to performing preliminary and postliminary activities which are integral and indispensable to their principal activities as FAs, and which are required by both the FAA and SkyWest.

109.     The FAs' required preliminary and postliminary activities as described fully herein are integral and indispensable to their principal activities, are required by both the FAA

and SkyWest Airlines, and therefore are not exempt from minimum hourly wage requirements pursuant to the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2).

110.    Additionally, the Federal Aviation Administration's strict regulation of the maximum allowable number of hours in the FAs' **duty day** confirms that these duty hours are integral and indispensable to FAs' principal activities.

111.    At all relevant times, SkyWest was aware that Plaintiffs and members of the Class were owed compensation for each hour of their workday pursuant to the FLSA.

112.    SkyWest's violations of 29 U.S.C. § 206 were repeated, willful and intentional.

113.    As a result of Defendants' willful and wrongful conduct, Plaintiffs and the Class have been deprived of wages, and have suffered damages.

114.    Plaintiffs, on behalf of themselves and all FLSA Class members who opt to join in this collective action, demand judgment against SkyWest for their unpaid wages for the three years preceding the filing of this complaint, plus an equal amount as liquidated damages, as well as reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, and such other and further relief as may be just and proper.

<u>COUNT II</u>
<u>ILLINOIS MINIMUM WAGE LAW</u>
**§ 820 ILCS 105/1 *et seq.***
(on behalf of the Illinois Class)

115.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

116.    SkyWest is in the business of providing regional commercial air service to cities across the United States, Canada, Mexico and the Caribbean, including into and out of the State of Illinois.

117.    SkyWest employs approximately 400 full-time FAs who are based at its Chicago O'Hare International Airport **domicile**, who fly into and out of Illinois on a regular basis, and/or who reside in Illinois.

118.    SkyWest employs FAs who are **domiciled** in Illinois, including Plaintiffs and members of the Illinois Class, to provide passengers with safe and comfortable travel accommodations according the requirements of the FAA and SkyWest.

119.    At all relevant times, SkyWest was an "employer" as defined by § 820 ILCS 105/3(c).

120.    At all relevant times, Plaintiffs and the Class were "employees" as defined by § 820 ILCS 105/3(d), and were not exempt based upon any of the subcategories included in that provision.

121.    The Illinois Minimum Wage Law § 820 ILCS 105/4(a)(1) provides for a statutory minimum wage for all employees "in every occupation" of "not less than $8.25 per hour" with certain exceptions, none of which apply to Plaintiffs and the Class.

122.    SkyWest violated the Illinois Minimum Wage Law § 820 ILCS 105/4(a)(1) by failing to pay any wages at all to Plaintiffs and the Class during certain clearly defined and traceable portions of their **duty day**, including but not limited to performing preliminary and postliminary activities that are integral and indispensable to their principal activities as FAs and are required by both the FAA and SkyWest.

123.    Additionally, Illinois Minimum Wage Law § 820 ILCS 105/4(a)(1) provides for a statutory limitation on hours of work week for all employees at 40 hours, unless the employer pays the employees for the hours in excess of 40 hours "at a rate not less than 1 ½ times the

regular rate at which he is employed." SkyWest FAs are not paid at a higher rate of pay for hours worked over 40 per week.

124.    SkyWest's violations of the Illinois Minimum Wage Law were repeated, willful, intentional, and with reckless disregard for the laws of the State of Illinois.

125.    According to § 820 ILCS 105/2:

> It is against public policy for an employer to pay to his employees an amount less than that fixed by this Act. Payment of any amount less than herein fixed is an unreasonable and oppressive wage, and less than sufficient to meet the minimum cost of living necessary for health. Any contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void.

126.    As a result of SkyWest's wrongful conduct, Plaintiffs and the Class have been deprived of wages, and have suffered damages.

127.    Plaintiffs, on behalf of themselves and all Illinois Class members demand judgment against SkyWest for the unpaid wages, plus damages, as well as reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, and such other and further relief as may be just and proper, pursuant to § 820 ILCS 105/12(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief against SkyWest as follows:

A.    An order enjoining SkyWest from retaliatory actions against the Plaintiffs, against Class members who opt-in to the Fair Labor Standards Act collective action, or who are members of the Illinois Class;

B.    An order declaring that the action is a proper collective action pursuant to 29 U.S.C. § 216(b) as to the FLSA claims alleged herein; certifying an opt-in class; and directing SkyWest to provide a list of all persons it employs or has employed as FAs in the last

three years prior to the filing of the complaint, including the last known address, email, and telephone numbers of current and former FAs;

C.  An order certifying the Illinois Class under Fed. R. Civ. P. 23 as to the Illinois Minimum Wage Law claims that are alleged herein; certifying Plaintiffs as class representatives; and appointing Plaintiffs' counsel as counsel for the Illinois Class;

D.  An order determining that the conduct alleged herein is unlawful under the FLSA and the Minimum Wage Law of the State of Illinois;

E.  An award of monetary damages to Plaintiffs and the Class in such amount as may be determined at trial;

F.  An order enjoining SkyWest from continuing the unlawful practices alleged herein;

G.  An award to Plaintiffs and the Class for reasonable attorneys' fees and costs, including but not limited to reimbursement of all costs related to the prosecution of this action; and

H.  An award to Plaintiffs and the Class of any such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.

Respectfully submitted on this the 6th day of March, 2015.

**GREG COLEMAN LAW PC**


*/s Gregory F. Coleman*
Gregory F. Coleman, TN Bar #014092
    *Member of the General Bar*
    *U.S. District Court for the*
    *Northern District of Illinois*
Adam Edwards *(pro hac vice to be filed)*
Mark Silvey *(pro hac vice to be filed)*
**GREG COLEMAN LAW PC**
550 Main Ave., Suite 600
Knoxville, TN 37902
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com

***Attorneys for Plaintiffs and the Class***
