# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREA HIRST, MOLLY STOVER, and EMILY STROBLE SZE, on behalf of themselves and all others similarly situated, | |
| | Case No. 1:15-cv-02036 |
| Plaintiffs, | Honorable Judge John J. Tharp, Jr. |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| SKYWEST, INC. and SKYWEST AIRLINES, INC., | |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

**INTRODUCTION**

Defendants advance three independent reasons why Plaintiffs' lawsuit should be dismissed. *First*, every district court within the Seventh Circuit, the U.S. Department of Labor ("DOL") and all Federal Circuit Courts to have addressed the issue have applied a "weekly averaging" approach under the Fair Labor Standards Act ("FLSA") and/or Illinois Minimum Wage Law ("IMWL"), and rejected the "hour-by-hour" approach advocated by Plaintiffs. *Second*, the IMWL does not apply to O'Hare based flight attendants who perform the vast majority of their work outside Illinois. *Third*, Plaintiffs' claims run afoul of the Commerce Clause, Field Preemption, the Airline Deregulation Act ("ADA"), and the Railway Labor Act ("RLA"). Indeed, the two attempts to sue SkyWest under California's wage and hour laws have failed for one or more of these reasons, *see Fitz-Gerald v. SkyWest Airlines, Inc.,* 155 Cal. App. 4th 411, 419 (2007), and *Blackwell v. SkyWest Airlines, Inc.*, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008); as have the efforts of other flight attendants to pursue state wage claims against their employers. *See*, *e.g., Adames v. Executive Airlines, Inc.* 258 F.3d 7 (1st Cir. 2001); *DeSaint, et. al. v. Delta Air Lines, Inc.*, 2015 WL 1888242 (D. Mass. Apr. 15, 2015).

In response to the Motion to Dismiss, Plaintiffs imagine law that does not exist in support of infractions that never occurred. Misstating the holdings of cases, erroneously suggesting they have been overruled or questioned, and failing to offer any legal support for their novel theories, Plaintiffs argue as follows in response:

    (a)    It is possible a court could ignore precedent and the DOL, and adopt Plaintiffs' novel hour-by-hour theory of minimum wage liability;

    (b)    While there is no authority supporting the extraterritorial application of the IMWL, it nonetheless applies to flight attendants who are based in Illinois but work outside Illinois, or at a minimum applies to those hours that are worked in Illinois;

    (c)    Because wage regulation is a historic power of the states, the doctrines of

field preemption, the Commerce Clause, and the Airline Deregulation Act do not bar Plaintiffs' wage and hour claims under the IMWL; and

(d) Plaintiffs' claims are not preempted by the RLA because the CBA between SkyWest and the SkyWest Inflight Association has an inadequate dispute resolution process, and in any event does not need to be interpreted to resolve Plaintiff's claims.

Each of these arguments fails as a matter of law. Defendants' Motion to Dismiss should be granted, and this case dismissed with prejudice.

## ARGUMENT

**I. Plaintiffs' Minimum Wage Claims Under the FLSA and IMWL Fail Because They Do Not Allege They Were Paid Less Than The Minimum Wage Using A Weekly Averaging Method.**

### A. Every District Court In The Seventh Circuit, The Department Of Labor And Every Federal Circuit To Decide The Issue Applies Weekly Averaging Under the FLSA And/Or IMWL.

Plaintiffs contend that Defendants violated the FLSA and IMWL by failing to pay Plaintiffs an hourly rate of pay in excess of the minimum wage for each and every hour they worked. Plaintiffs argue that "although the case law in the Seventh Circuit is not well-established on the question of whether each and every hour of work must be compensated at no less than the minimum wage, that possibility has not been precluded in the district courts." (Plaintiffs' Opposition, Doc. 51 "Opp.", at 11).

Contrary to Plaintiffs' assertion, the "possibility" of an hour-by-hour analysis has been rejected by all district courts within the Seventh Circuit that have considered the issue, as well as the DOL and all Federal Circuit Courts to have considered the issue. Defendants cited four Seventh Circuit district court cases, the DOL's regulations, 29 C.F.R. § 778.105, as well as decisions from the Ninth, Eighth, Fourth and D.C. Circuits – all rejecting Plaintiffs' hour-by-hour approach and recognizing that minimum wage claims must be analyzed by averaging

2

weekly pay against weekly hours. (Defs.' Memorandum of Law, Doc. 36 "MTD", at 5-7). In addition to this authority, the DOL's Field Operations Handbook likewise requires weekly averaging to determine minimum wage compliance under the FLSA: it states that the minimum wage has been complied with "if the overall earnings for the [workweek] equal or exceed the amount due at the applicable [minimum wage]…These principles also apply where an employee is not compensated for time which is compensable under the FLSA." *See* DOL's Field Operations Handbook, Section 30b02, available at http://www.dol.gov/whd/FOH/ (attached hereto as **Exhibit 1**).

Plaintiffs rebut none of this authority and do not provide any legal authority requiring hour-by-hour compensation for each and every hour for minimum wage purposes. Plaintiffs cite three cases in their Opposition suggesting that each recognized the possibility of an hour-by-hour approach. (Opp., at 11). None of those cases, however, even addressed the issue of "weekly averaging" vs "hour-by-hour," let alone endorse one approach over the other. And the lead case Plaintiffs rely on to support their "hour-by-hour" theory, *Olsen v. Superior Pontiac-GMC, Inc.* (Opp., at 10), actually did address the issue, and concluded that compensation must be averaged across all hours worked to determine whether the minimum wage has been paid. 765 F.2d 1570, 1577 (11th Cir. 1985) (holding that the proper method to determine whether "each hour" was paid at the minimum wage is based on an averaging formula).[1]

---

[1] If Plaintiffs' hour-by-hour theory were viable, then "gap time" claims would be recognized under the FLSA and IMWL. "Gap time" pay refers to uncompensated hours before 40 hours in a workweek and at a rate that averages out to more than the minimum wage. Courts throughout the Seventh Circuit reject "gap time" claims. *See Nicholson v. UTI Worldwise*, 2010 WL 551551, at *5 (S.D. Ill. 2010) (dismissing plaintiff's FLSA and IMWL claims for "gap time" pay); *Jones v. C&D Tech., Inc.*, 8 F. Supp. 3d 1054, 1070 (S.D. Ind. 2014) (same); *see also Sherman v. Premium Concrete Cutting, Inc.*, 2004 WL 1510030, at *2 (N.D. Ill. July 6, 2004) (denying plaintiffs FLSA claim for "gap time" pay); *Brown v. Lululemon Athletica, Inc.*, 2011 WL 741254, at *4-5 (N.D. Ill. Feb. 24, 2011) (dismissing gap-time claim).

In short, Plaintiffs nitpick the facts in Defendant's authority, but fail to offer a single authority supporting their own position.[2] Again, the DOL, all Federal Circuit Courts, and all district courts within the Seventh Circuit to have considered Plaintiffs' hour-by-hour theory have rejected it. This Court should do the same.

B. **Plaintiffs Do Not Allege That They Were Paid Less Than The Minimum Wage In Any Workweek Using A "Weekly Averaging" Method.**

Hedging their bets, Plaintiffs alternatively suggest that Defendants violated the FLSA and IMWL even using the weekly averaging method. In support, Plaintiffs cite five paragraphs of the Complaint they contend allege minimum wage violations based on a weekly averaging method. (Opp., at 9-10). Only two of these allegations are even somewhat relevant: Paragraph 133 (alleging "on information and belief" that FAs "actually receive less than the minimum wage *on certain work days*, even if this Court were to adopt a weekly averaging of wage compensation") (emphasis added), and paragraph 146 (alleging "FAs are at risk of and do receive less than the Illinois Minimum Wage *on certain workdays*") (emphasis added).

These allegations demonstrate Plaintiffs' fundamental misunderstanding of the FLSA and IMWL. They allege only that there may have been "*work days*" where Plaintiffs were paid less than the minimum wage. Importantly, they do not allege that there were any *work weeks* when Plaintiffs received less than the minimum wage. Because, as set forth *supra*, the overwhelming weight of authority requires *weekly* averaging, and Plaintiffs fail to plead a single *work week*

---

[2] Plaintiffs also argue that Defendants "overstate" the holding of *DeSaint v. Delta Air Lines, Inc.,* 2015 WL 1888242, because the court did an hour-by-hour analysis, and determined that Delta paid its flight attendants for all hours worked. This is not accurate. The court expressly stated that there was nothing in the Massachusetts Wage Act to support Plaintiffs' hour-by-hour theory of liability. *Id.* at *10 ("[Plaintiffs] contend that Delta's scheme of paying an hourly flight rate for '[h]ours flown' and 'hours ... credited' is not equivalent to paying its Flight Attendants an hourly rate for each hour of work, as the Wage Act requires. This court finds that there is nothing in the Wage Act to support the plaintiffs' assertion…[T]he Act does not define 'wages' *to require compensation on an hour-by-hour basis*.") (emphasis added).

4

where they received less than the minimum wage on average, both their FLSA and IMWL claims must be dismissed.

In addition, these allegations are insufficient to withstand a 12(b)(6) motion because nowhere in Plaintiffs' voluminous complaint (containing extensive examples) do they allege Plaintiffs actually received less than the minimum wage on an average basis over the course of a week. *See, e.g., Silver v. Townstone Financial, Inc.*, 2015 WL 1259507 (N.D. Ill. March, 17, 2015) (collecting authority and holding threadbare and conclusory claims of FLSA violations must be dismissed under 12(b)(6)). To the contrary, in the only two examples set forth in the Complaint, Plaintiff Hirst's regular rate was $12.78 per hour (Figure 1), and $13.74 per hour (Figure 3). Accordingly, Plaintiffs' FLSA and IMWL claims must be dismissed as they received at least the minimum wage at all relevant times.

## II. Plaintiffs' Minimum Wage And Overtime Claims Under the IMWL Fail Because Plaintiffs Worked Predominantly Outside the State.

### A. The IMWL Claim Must Be Dismissed Because The IMWL Does Not Apply to Flight Attendants Who Spend Nearly All Of Their Time Working Outside Illinois.

Plaintiffs do not dispute that the vast majority of an O'Hare-based flight attendant's work occurs outside the State of Illinois. Indeed, Plaintiffs point to Figure 3 in their Complaint, which details a four-day trip departing Chicago on December 21, 2014, in which Plaintiff Hirst claims she worked approximately 3 hours in Illinois that week, and 35 hours in a combination of Texas, California, Missouri and Georgia, and during which she was paid at least $13.74 per hour using a weekly averaging method. (Opp. at 16).

The Illinois Supreme Court has held that Illinois' laws "do not have extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 184-185 (2005), quoting *Dur-Ite Co. v. Industrial*

5

*Commission*, 394 Ill. 338 (1946). The IMWL does not provide for extraterritorial application outside the borders of Illinois. *See* 820 ILCS 105/2 (the statute applies to "places of employment *in the State of Illinois*") (emphasis added); *see also Wooley v. Bridgeview Bank Mtg. Co. LLC*, 2015 WL 327357, at *2 (N.D. Ill. Jan. 23, 2015) (relying on 820 ILCS 105/2 and holding "the purpose of the IMWL is to guard employees in Illinois and not elsewhere"). Plaintiffs do not and cannot dispute this uncontroverted authority and their IMWL claim must be dismissed because the vast majority of Plaintiffs' work occurs outside of Illinois.

Plaintiffs do not address any of these cases nor do they address decisions from other states holding that those states' wage laws are inapplicable to employees who perform the vast majority of work outside that state. *See, e.g. Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 900 (C.D. Cal. 2009) (refusing to apply California's wage laws to a helicopter pilot who performed the vast majority of his work outside California, even though he resided and performed some work in California); *O'Neil v. Mermaid Touring, Inc.*, 968 F. Supp.2d 572 (S.D.N.Y. 2013) (New York wage laws did not apply where plaintiff (Lady Gaga's personal assistant) resided in New York but spent most work time elsewhere, because New York law did not contain a "clear statement of intended extraterritorial effect"). Most glaringly, Plaintiffs offer no authority for the proposition that the IMWL applies to an employee who lives in Illinois but spends a minimal percentage of her work time in the state. Because the IMWL does not apply extraterritorially, Plaintiffs' IMWL claims must be dismissed.

  **B. Even If The IMWL Applied Only To Hours Worked In Illinois, Plaintiffs' Minimum Wage And Overtime Claims Still Fail.**

Perhaps recognizing that the IMWL does not apply to hours worked outside of Illinois, Plaintiffs alternatively suggest that it should apply at least to those hours Plaintiffs worked in Illinois. Plaintiffs cite zero authority in support of this contention, reason enough to reject this

argument. But even if this Court concluded that the IMWL applies to hours worked in Illinois, Plaintiffs still fail to state a minimum wage claim under the IMWL because they do not allege they were ever paid less than the minimum wage for time worked in Illinois using a weekly averaging method.

Plaintiffs' overtime claim under the IMWL[3] fails for similar reasons. Plaintiffs' First Amended Complaint is devoid of any allegation that Plaintiffs worked more than 40 hours in the State of Illinois. For this reason alone, Plaintiffs' overtime claim under the IMWL fails. *See, e.g., O'Neil*, 968 F. Supp.2d at 579 (Plaintiffs' overtime claim under New York law failed because Plaintiff did not work in excess of 40 hours *within the State of New York*).

In fact, Plaintiffs' First Amended Complaint fails to identify a single workweek in which any flight attendant worked more than 40 hours in any combination of states. Plaintiffs' Complaint alludes in one place to the possibility that a flight attendant worked in excess of 40 hours in a workweek. *See* Doc. 22, ¶148 ("SkyWest FA's are not paid at a higher rate of pay for hours worked over 40 per week"). Plaintiffs suggest, in footnote 15, that Plaintiff Hirst may have worked additional time later this same week, depending on her start and finish day of her trip, which could have pushed her over 40 hours (at least incrementally). (Opp. At 17, n.15). This statement, however, directly contradicts her Complaint, which alleges she worked 33 hours and 44 minutes that week (not 40+ hours), Doc. 22, ¶29, and is the type of unsupported speculation that *Iqbal/Twombly* prevents. Had Plaintiffs actually worked 40+ hours in a single work week, one would expect them to assert that in the Complaint, instead of citing mere conjecture, especially where Defendants voluntarily produced all of Plaintiff Hirst's payroll records before Plaintiffs filed their First Amended Complaint.

---

[3] Airlines are exempt from the overtime requirements of the FLSA. 29 U.S.C. § 213(b)(3).

**III. Plaintiffs' Claims Run Afoul Of The Doctrine Of Field Preemption, The Commerce Clause, And Are Preempted By The ADA And The RLA.**

Even if there were a legal basis to apply Plaintiffs' novel hour-by-hour minimum wage theory, or to apply various state minimum wage laws (including the IMWL) to flight attendants (and pilots) depending on which state each is based in or happens to be flying over at the time, Plaintiffs' claims still fail because they run headfirst into federal law.

**A.     *Fitz-Gerald* And *Blackwell* Have Not Been Overruled or Questioned.**

Plaintiffs first attack Defendants' jurisdictional arguments by suggesting that the preemption holdings of *Blackwell* and *Fitz-Gerald* were overruled in *People ex. rel. Harris v. Pac Anchor Transportation*, 329 P.3d 180 (Cal. 2014), and/or "questioned" in *Alaska Airlines, Inc. v. Schurke*, 2013 WL 2402944 (W.D. Wash. May 31, 2013), and *Perez v. Daughters of Charity Health Sys.*, 2012 U.S. Dist. LEXIS 1547 (C.D. Cal. Jan. 5, 2012).   (Opp. at 3, 6). Plaintiffs are mistaken.

In *Pac Anchor*, the California Supreme Court held that the Federal Aviation Administration Authorization Act ("FAAAA") did not facially preempt plaintiffs' misclassification claim under California law (an argument that was not made in *Fitz-Gerald*, and is not made by Defendants in this case). 329 P.3d at 775.   The Court did not mention, let alone overrule, Field Preemption, the Commerce Clause or RLA.[4] The other cases Plaintiffs cite likewise do not criticize or question *Blackwell* or *Fitz-Gerald*; they simply distinguish them. *See Schurke* 2013 WL 2402944, at *8 (distinguishing *Blackwell* and *Fitz-Gerald* by noting that those disputes required interpretation of the CBA, while the Washington Family Care Act claim at issue did not); *Perez,* 2012 U.S. Dist. LEXIS 1547 (distinguishing *Blackwell* and *Fitz-Gerald*

---

[4]     The *Pac-Anchor* court also held that the FAAAA did not preempt the claim as applied, but it did not address *Fitz-Gerald* in that section of its holding.

because those cases involved the RLA, a unique statute, whereas *Perez* did not).[5] *Blackwell* and *Fitz-Gerald* remain good law and fully support dismissal here.

> **B. The States' Power To Enact Wage Laws Does Not Save Plaintiffs' IMWL Claim From Field Preemption, The Commerce Clause, Or The ADA.**
>
> > 1. **The Seventh Circuit's Holding in *Wisconsin Central* Applies To The Airline Industry.**

In *Wisconsin Central v. Shannon*, the Seventh Circuit concluded as a matter of law that the IMWL was preempted as to interstate railroads because "federal law so thoroughly occupies [the] legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" 539 F.3d 751, 762 (7th Cir. 2008). Citing *Costello v. BeavEx, Inc.*, 303 F.R.D. 295 (N.D.Ill. 2014), Plaintiffs respond that wages are a police power of the state and may not be preempted absent some clear and manifest intent by Congress.

*Costello* involved a claim against a trucking company that its drivers were misclassified as independent contractors, resulting in deductions in violation of the IWPCA and unpaid overtime in violation of the IMWL. *Id.* *Costello* involved neither a railroad nor airline; nor did it involve the issue of field preemption. The suggestion that *Costello* (a district court opinion) precludes field preemption of state wage laws grossly overstates the holding of *Costello*, and, more importantly, ignores the Seventh Circuit's holding in *Wisconsin Central* -- that state wage and hour laws *were* subject to field preemption.

---

[5] Plaintiffs also argue that *Fitz-Gerald* should be ignored because of the Court's "pervasive misunderstanding" of SkyWest's compensation scheme. This argument makes no sense. The Court in *Fitz-Gerald* concluded that the RLA preempted plaintiff's wage claims because the Court would need to interpret the CBA to determine the regular rate of pay. 155 Cal. App. 4th at 419. The very fact that Plaintiffs quibble with how the *Fitz-Gerald* court described the CBA proves just how complex the Agreement's wage and hour provisions are, and how they need to be interpreted to decide Plaintiffs' claims.

Perhaps recognizing this fact, Plaintiffs further erroneously argue that *Wisconsin Central* does not apply to airlines because Congress has not regulated airlines as heavily as railroads. *Wisconsin Central* recognized that Congress had passed laws touching on nearly every aspect of the railway industry, including property rights, shipping, labor relations, hours of work, safety, security, retirement, unemployment, and preserving the railroads during financial difficulties. *Id*. Likewise, Congress and federal regulators have passed laws and enacted regulations touching on nearly every aspect of the airline industry, including shipping, labor relations, maximum work hours, rest requirements, safety, security, operations, job functions and qualifications, initial and recurrent training, drug testing, and background requirements.[6] As the same comprehensive regulatory scheme exists in the airline industry, the holding of *Wisconsin Central* applies equally to this case.

        2.    <u>The States' Power To Enact Wage Laws Does Not Mean The Commerce Clause Permits Such Application To An Airline's Flight Attendants.</u>

Relegating their response to a footnote, Plaintiffs argue that a state's power to regulate wages likewise precludes application of the Commerce Clause. Specifically, Plaintiffs argue that the Commerce Clause cannot place limits on a state's power to regulate wages. In support, Plaintiffs rely on *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985) (addressing the question of whether a public transit system could be subject to the FLSA); and *State of Texas v. United States*, 730 F.2d 339 (5th Cir. 1984) (addressing whether the Staggers Act preemption of state jurisdiction over rate increases violated the Commerce Clause).

---

[6]     *See, e.g.,* 45 U.S.C. § 151, *et. seq.* (labor relations); 49 U.S.C. §§ 44701, *et. seq.* (Federal Aviation Administration); 14 C.F.R. Parts 1-199 (establishing regulations addressing, among other topics, pilot and flight attendant certification and requirements, medical standards, operating and flight rules, training requirements, safety, background qualifications, hours of work limitations); 49 C.F.R. Parts 1500-1699 (establishing the TSA and security rules for airlines). Even more than it regulates railroads, Congress dictates the duties and responsibilities of flight attendants. *See* 14 C.F.R. Part 121. Indeed, Plaintiffs; Complaint alleges that "most" of the duties flight attendants perform each day are mandated by the FAA. (Doc. 22, ¶¶ 61, 68, 74).

Both *Garcia* and *State of Texas* addressed whether Congress had the power to regulate certain state action. The Commerce Clause, however, not only confers power on the federal government, "it is also a substantive 'restriction on permissible state regulation' of interstate commerce" and operates as a self-executing limitation on the power of the states to enact laws that burden interstate commerce. *Dennis v. Higgins* 498 U.S. 439, 447 (1991). It is this second limit imposed by the Commerce Clause that precludes application of the IMWL to SkyWest's flight attendants. And it is precisely this limit that led the Court in *Fitz-Gerald* to conclude that applying California's wage and hour laws to SkyWest flight attendants would unduly burden interstate commerce. 155 Cal. App. 4th at 419.

Here, SkyWest's Commerce Clause argument is even more compelling. If Plaintiffs' argument that the IMWL applied to all Illinois-based flight attendants irrespective of what state they are in (or over) were ever accepted, then SkyWest would have multiple employees (pilots and flight attendants) based in different states flying on the same plane subject to different states' wage and hour laws. Moreover, if Plaintiffs' argument that the IMWL applied only to hours worked in Illinois were accepted, then SkyWest would have to ascertain which state each plane was flying over during certain hours of the day in order to compensate flight attendants in accordance with the laws of that state for that period of time. Again, the complexities and inequities associated with such a system, even if it could be designed, are mind-boggling. This is precisely the burden the Commerce Clause is designed to avoid.

### 3. The ADA Preempts Plaintiffs' Proposed Application of the IMWL to Flight Attendants.

Plaintiffs do not contest the fact that, were the Court to adopt their hour-by-hour interpretation of the IMWL, SkyWest would be required to restructure its compensation policies, redesign crew compliments and routes (impacting rates, routes and services). Instead, citing two

cases, *Costello,* 303 F.R.D. 295, and *Difiore v. American Airlines, Inc.*, 646 F.3d 81, 89 (1st Cir. 2011), Plaintiffs argue that the ADA does not preempt state wage laws because that power belongs to the states absent "clear and manifest" language to the contrary. Plaintiffs' broad pronouncement that the ADA does not preempt state wage and hour laws is wrong.

As noted above, the *Costello* court simply concluded that the FAAAA did not facially preempt the IWPCA because defendant failed to offer any evidence that application of the IWPCA would have a significant impact on routes, prices, or services. Here, a federal court has already concluded that application of a state's wage and hour law would impermissibly affect SkyWest's "rates and routes." *Blackwell*, 2008 WL 5103195, at *17-18. And the ADA preemption argument is even more compelling in this case; in *Blackwell*, the plaintiffs sought only the application of California's laws. Here, Plaintiffs' misguided theories implicate the wage and hour laws of many states and, according to the complaint, even particular City wage ordinances. *See* Doc. 22, ¶147 (referencing the City of Chicago minimum wage).

Even more curious is Plaintiffs' reliance on *Difiore*, which involved the application of Massachusetts' tip law to porters. 646 F.3d at 89 (holding Massachusetts' tip law was preempted by ADA because application of law would directly impact the services and the pricing of such services). Here, as in *Difore*, Defendants are not arguing that generally increasing labor costs will lead to increased fares. Rather, it is Plaintiffs' proposed application of the IMWL – i.e., that SkyWest must pay O'Hare-based flight attendants an hourly rate over the minimum wage on an hour-by-hour basis while they are on the ground in Illinois or flying in Illinois airspace -- that would affect rates, routes and services.

> **C. Plaintiffs' FLSA and IMWL Claims Are Precluded/Preempted By The RLA Because The Collective Bargaining Agreement Between SkyWest and SIA Must Be Interpreted To Resolve Plaintiffs' Claims.**

Plaintiffs do not dispute that SkyWest is a carrier under the RLA, or that the SIA is a "representative" of the SkyWest flight attendants under the RLA. Instead, Plaintiffs argue that (1) the Agreement between SkyWest and the SIA is not a CBA because it does not have a proper dispute resolution process, and (2) the resolution of Plaintiffs' minimum wage and overtime claims do not require interpretation of the Agreement. Both arguments fail.

As to Plaintiffs' first point, there is no dispute that SkyWest and SIA engaged in collective bargaining negotiations, during which they addressed wages, hours, schedules, bidding, work rules (including discipline and fringe benefits) and working conditions; these negotiations led to the execution of collective bargaining agreements by both SkyWest executives and SIA's President; and the Agreement *cannot* be revised unilaterally (Nicolay Dec. at ¶¶ 5-7; Doc. 36-2.). Based on these same facts, the court in *Fitz-Gerald* – after considering a full record on summary judgment - concluded that the Agreement was a collective bargaining agreement under the RLA. 155 Cal. App. 4th at 419.

Plaintiffs further contend that the dispute resolution procedures in the Agreement are inadequate. (Opp. at 22). Nonetheless, Section 2325.3 provides a grievance procedure for flight attendants covering "any disagreement concerning the interpretation of any of the terms in this Flight Attendant Policy Manual." (Doc. 22-2, Section 2325.3). And two different courts have already held that SkyWest's agreements constitute collective bargaining agreements for purposes of the RLA. *See Fitz-Gerald,* 155 Cal. App. 4th at 419 (Flight Attendant Manual was a CBA under the RLA); *Blackwell*, 2008 WL 5103195 at *11-*15 (negotiated Standard Practices agreement was a CBA under the RLA).

Plaintiffs' second point is equally unavailing, and even self-contradictory. On the one hand, Plaintiffs opine that the Court may decide their FLSA and IMWL claims without

interpreting the Agreement, while, on the other hand, they accuse SkyWest of having an overly confusing compensation scheme incapable of understanding by flight attendants or the judges of the California Court of Appeals. (Opp., at 21; Doc. 22, ¶¶90-95). Plaintiffs do not attempt to explain how their minimum wage or overtime claims could possibly be decided without interpreting the Agreement. Nor do they attempt to explain how their claims differ from those in *Fitz-Gerald*, *Blackwell, Adames, or Burgos,* or why the courts' findings of RLA preemption in those cases would not apply equally here.

Like Delta in the *DeSaint* case, SkyWest has implemented a nationwide, formula-based Flight Attendant compensation policy that follows the industry standard of applying a base rate, which is the block pay rate. Under the CBA, flight attendants are guaranteed a set amount of pay covering every hour they work no matter how much time they are in the air. (CBA, Doc. 22-2, Sec. 2308, 2317). Flight Attendants are also guaranteed one hour of block pay for every two hours on the ground. *Id*., at Sec. 2308. If two pay formulas come into play, flight attendants receive the higher of the two. *Id*., at Sec. 2308. There is no time from their report time to their release time for which they are not being paid. *Id*., at Sec. 2308, 2317. This is no different than the facts in *DeSaint, see* 2015 WL 188242, *4-*7, but Plaintiffs insist on mischaracterizing block pay rate as a fixed, per hour rate of pay rather than a starting point for determining wages under the relevant compensation formulas.

Accordingly, to determine whether Plaintiffs were paid the minimum wage, the Court will need to decide how many hours of work each flight attendant worked in a week and determine which of those hours count as compensable hours, including "flight time, on duty time, and flight time guarantees." *Fitz-Gerald*, 155 Cal.App.4[th] at 421-22. Then, the Court will need to decide which pay is included in the regular rate and which pay is not and then select the

pay formula that applies. Each of these determinations cannot be made without interpreting the Agreement.[7] Because the Agreement must be interpreted to resolve Plaintiffs' wage and hour claims under both the FLSA and IMWL, those claims are preempted by the RLA.[8]

For all these reasons, as well as those previously set forth, Defendants respectfully ask the Court to dismiss Plaintiffs' First Amended Complaint with prejudice.

DATED: September 4, 2015.                                Respectfully submitted,

                                                    By:   /s/ Michael D. Ray
                                                    One of the Attorneys for Defendants
                                                    **SKYWEST, INC.** and **SKYWEST AIRLINES, INC.**

Michael H. Cramer (ARDC No. 6199313)
Michael D. Ray (ARDC No. 6285109)
Colleen G. DeRosa (ARDC No. 6301589)
**OGLETREE, DEAKINS, NASH,**
  **SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Phone: 312.558.1220
Fax: 312.807.3619

---

[7] For example, Sections 2308.1, 2327.1, 2328 and 2330 must be interpreted to determine how much flight time each flight attendant worked (whether actual or historic), while Sections 2308.4, 5,7, 2316.3, 2317.3, 6D and 2327.2 will need to be analyzed to determine on duty time and flight time guarantees. Sections 2308.8, 2308.9, 2308.1, 2308.11, 2308.12, 2308.13, 2308.16, 2308.17, 2308.19, 2308.21, 2308.22, and 2309.1, would likewise need to be interpreted to determine whether each of the types of pay identified in those sections is or is not part of the regular rate. (*see* Doc. 36-3).

[8] Citing several district court cases addressing the question of adequacy of representation under Rule 23, Plaintiffs argue that they have standing to pursue injunctive, equitable and declaratory relief. In *Feit v. Ward*, the Seventh Circuit held that plaintiffs (former employees) could not pursue equitable claims on behalf of defendant's current employees because the plaintiff was not subject to an immediate threat of injury from the alleged unlawful conduct and would not benefit from the requested relief. 886 F.2d 848, 857 (7th Cir. 1989). Plaintiffs do not point to any Seventh Circuit case questioning the holding of *Feit*. Accordingly, this argument must be rejected. Further, Plaintiffs make no attempt to distinguish the wave of recent authority cited by Defendants holding that former employees cannot seek declaratory or injunctive relief. (Doc. 36, p. 21, n.12).

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 4, 2015, the foregoing ***Reply in Support of Its Motion to Dismiss Plaintiffs' Amended Class Action Complaint*** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

>Gregory F. Coleman
>Adam Edwards *(pro hac vice)*
>Mark Silvey *(pro hac vice)*
>Lisa A. White *(pro hac vice)*
>**GREG COLEMAN LAW, PC**
>550 Main Avenue, Suite 600
>Knoxville, TN 37902
>*greg@gregcolemanlaw.com*
>*adam@gregcolemanlaw.com*
>*mark@gregcolemanlaw.com*
>*lisa@gregcolemanlaw.com*
>
>Edward A. Wallace
>Amy E. Keller
>**WEXLER WALLACE LLP**
>55 West Monroe Street, Suite 3300
>Chicago, IL 60603
>*eaw@wexlerwallace.com*
>*aek@wexlerwallace.com*
>
>***Attorneys for Plaintiffs and Proposed Class***

    /s/ Michael D. Ray

30b  MINIMUM WAGE

30b00  <u>FLSA MW</u>.

(a) The FLSA MW rate is $3.35 per hour, effective 1/1/81.

30b01  <u>Monthly salary equivalents</u>.

(a) Since the number of regularly scheduled work hours may be greater in long months than in short months, the strict allocation of a regular monthly salary to the hours worked within each month may result in a technical MW violation in the longer months. However, for enforcement purposes, a regular monthly salary of $580.67 shall be considered as equivalent to a weekly wage of $134.00 and accepted as compliance with the $3.35 MW requirement if it is compensation for 40 hours of work or less in the w/w. If the employer rounds out this amount to not more than $585.00 per month, this will not affect the regular rate (i.e., $3.35) for OT purposes.

(b) Where an employee is paid a salary for a period in excess of a w/w (for example, on a monthly or semi-monthly basis) and works an alternating schedule of fixed w/w's, and an equal allocation of the salary would result in payment of less than the MW for the long w/w's, there will be compliance with the MW provisions of FLSA provided:

(1) the salary is sufficient to meet the MW requirements for all hours worked during the pay period; and

(2) there is an agreement or understanding between the parties that a larger portion of the salary is to be allocated to the longer w/w's. The employer shall be advised that the firm's records should properly reflect the allocation of the salary on a w/w basis.

30b02  <u>Minimum rate of pay for non-OT weeks</u>.

<u>In non-OT w/w's or in w/w's in which the OT provisions do not apply</u>, an employee subject to section 6 of FLSA is considered to be paid in compliance <u>if the overall earnings for the w/w equal or exceed the amount due at the applicable MW</u>. This is true regardless of whether the employee is paid on the basis of a single hourly rate, different hourly rates, commissions, certain bonuses, or some combination of these methods. In other words, if the employee's total earnings for the w/w (including certain bonuses such as a production bonus - <u>see</u> FOH 30b07) divided by compensable hours equals or exceeds the applicable MW, the employee has been paid in compliance with Sec 6. These principles will also apply where an employee is not compensated for time which is compensable under FLSA. For example, if an employee subject to the $3.35 MW during a w/w is paid for 32 hours at $5.50 per hour and is paid at a lesser rate or nothing at all for 8 or fewer additional hours worked, this individual is considered to have been paid in compliance with Sec 6. The WH position regarding proper payment in w/w's where OT is due is set out in 32j02.

EXHIBIT 1